UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BURRILVILLE SCHOOL DEPARTMENT

v. C.A. No. 05-105 L

W.B. a minor, by and through his
Natural parents and next friends, Mr. & Mrs. B.

**AFFIDAVIT OF JAMES W. MURPHY**

Now comes James W. Murphy of Johnston, Rhode Island, who, having been duly sworn, does hereby depose and state as follows:

1. I am the Assistant Principal of the Burrilville Middle School and have held this position for the last four years.

2. I am personally familiar with W.B., an eighth grader in the Burrilville Middle School.

3. I am primarily responsible for student discipline throughout the school.

4. In that capacity, I have had several disciplinary interactions with W.B.

5. There have been numerous incidents involving W.B. exhibiting violent behavior in the school over the last year and a half, and this behavior has gotten worse recently.

6. On or about the week of February 7, 2005, I observed W.B. in a very agitated state use his thumb and index finger to mimic a hand gun, point it to his head and say that he is "going to kill himself".

7. During the week of February 15, 2005, I personally observed him punch a cinder block wall with his fist in a violent and forceful way while demonstrating severe anger.

8. On or about February 28, 2005, I observed W.B. go to a lunch table and drank an amount of ketchup from a bottle of ketchup and then walked over to a waste container and vomited in front of a cafeteria full of students. Also that day I observed him punch a metal locker with extreme force.

9. On or about March 2, 2005, I was warned by Pat Beaudreau, a custodian at the school, that "I should watch my back", and she also said that W.B. had threatened in her presence to throw a milk carton at me.

2

10. On the same day (on or about March 2, 2005), Terry Robinson, chair of the Special Education Department at Burrilville Middle School, advised me that W.B. had threatened "to get" me, and she expressed concern that he would attempt to do harm to me. I suggested that Mrs. Robinson write a report.

11. As a result of these warnings, I was in fear that W.B. would attempt to physically hurt me. As a further result, I sought the assistance of the Burrilville Police Department and requested that they escort W.B. to his school bus at the end of the school day. The Police Department complied with my request. I filed a report with the Police Department's school resource officer documenting the threats made against me.

12. I do not feel comfortable with W.B. returning to school and, based upon his prior violent conduct conducted in my presence, and the recent threats he has made against me, I am genuinely concerned that he may attempt to act out on these threats and cause injury to me, to himself, and/or to other students.

13. The above facts are true and correct and based upon my own personal knowledge.

James W. Murphy

James W. Murphy

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUBSCRIBED AND SWORN TO before me in Burrilville, Rhode Island this 7th day of March, 2005.

Kevin J. McAllister

Kevin J. McAllister, Notary Public
My Commission Expires June 14, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BURRILVILLE SCHOOL DEPARTMENT

v. C.A. No.

W.B. a minor, by and through his
Natural parents and next friends, Mr. & Mrs. B.

**AFFIDAVIT OF DONNA L. RODERICK**

Now comes Donna L. Roderick, of North Scituate, Rhode Island, who, having been duly sworn, does hereby depose and state as follows:

1. I am a Fitness Instructor at the Burrilville Middle School and have held this position since since 1988.

2. I am personally familiar with W.B., an eighth grader in the Burrilville Middle School.

3. I have interacted with W.B. on several occasions, particularly as his health teacher while he was in the seventh grade, and his co-fitness teacher in the Fall of 2004.

4. Last year, I arranged for a police officer to make a gun safety presentation to my health class. During that presentation, W.B. raised his had and stated that his father had guns in the house and that he (W.B.) had access to them. Because I had observed W.B. demonstrate very angry behavior on previous occasions, I became very concerned with this information and reported his statement to the school psychologist. I felt at the time, and continue to feel, that because W.B.'s behavior was so unpredictable, he had the potential to be dangerous to others.

5. On another occasion during the Fall of 2004, I asked W.B. to get into line. He said this is "bull crap". I said that such language was inappropriate. In response, he leaned within 6 inches of my face and said that he could say things to me that would make me run out of this room crying. I felt personally threatened by this, and reported him to the principal. I later reported this to Burrilville Police Liason Officer Beauchemin, because I felt threatened by W.B.

6. The above facts are true and correct and based upon my own personal knowledge.

Donna L. Roderick

Donna L. Roderick

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUBSCRIBED AND SWORN TO before me in Burrilville, Rhode Island this 7th day of March, 2005.

Kevin J. McAllister, Notary Public
My Commission Expires June 14, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BURRILVILLE SCHOOL DEPARTMENT

v. C.A. No.

W.B. a minor, by and through his
Natural parents and next friends, Mr. & Mrs. B.

**AFFIDAVIT OF BARBARA DAY**

Now comes Barbara Day, of Warwick, Rhode Island, who, having been duly sworn, does hereby depose and state as follows:

1. I am the Guidance Counselor at the Burrilville Middle School.

2. In this capacity, I have been personally familiar with W.B., an eighth grader in the Burrilville Middle School, since he entered the sixth grade.

3. I have interacted with W.B. on a regular basis over the last two and one-half years.

4. This school year, I recall an incident in which W.B. was very agitated with his resource teacher and was gesticulating about in the hall way in a very angry way. When I approached him, he showed me his forearms, which were red and all scratched up, and said words to the effect, "look at what she made me do to myself", and went on to say "this place is going to make me ..." and pointed his index finger and thumb to his head as if to shoot himself with a hand gun.

5. I have seen writings he has authored, which are often very violent.

6. I have seen him push other students on numerous occasions. I have observed him to have little or no self control when in a crowd.

7. The above facts are true and correct and based upon my own personal knowledge.

Barbara Day

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUBSCRIBED AND SWORN TO before me in Burrilville, Rhode Island this 7th day of March, 2005.

Kevin J. McAllister, Notary Public
My Commission Expires June 14, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BURRILVILLE SCHOOL DEPARTMENT

v. C.A. No.

W.B. a minor, by and through his
Natural parents and next friends, Mr. & Mrs. B.

## AFFIDAVIT OF JOHN R. CONNORS

Now comes John R. Connors, a Lieutenant with Burrilville Police Department, who, having been duly sworn, does hereby depose and state as follows:

1. I have been a member of the Burrilville Police Department for approximately sixteen (16) years, and I have held the rank of Lieutenant for approximately seven (7) years.

2. I am personally familiar with W.B., an eighth grader at the Burrilville Middle School.

3. Late last fall (2004), while on duty, I had occasion to witness W.B. chasing another student within the sixth grade wing of the Burrilville Middle School. On that occasion, I heard W.B., in an angry and vulgar manner, threaten to break or smash the other student's head. I took his threat very seriously and immediately removed him from the area. I attempted to explain to him that the behavior he had demonstrated in my presence was inappropriate. He responded to me in a very disrespectful and carefree manner.

4. On or about March 2, 2005, I responded to a call made to the Burrilville Police Department from the Burrilville Middle School. The Police Department was summoned to the school to respond to an allegation of W.B. making threats against Mr. Murphy, the Vice Principal.

5. Mr. Murphy indicated to me that W.B. had made threats of bodily harm against him that day and requested that W.B. be escorted to his school bus. Mr. Murphy expressed to me that he was fearful that W.B. would attempt to physically hurt him or someone else and thought that the police escort was necessary.

6. Based upon my observation of Mr. Murphy, he appeared to be genuinely in fear for his own safety on that occasion.

7. When I met W.B. at the office and advised him that I would escort him to the school bus, he replied to me to the effect "that fucking Murphy" and "this is

fucking bullshit". Over the next few minutes, I felt that I successfully calmed him down by asking him to relax and by saying to him, among other things, that he could make tomorrow a better day. I gave him some space and after a few minutes, I observed him walk onto the bus without further incident.

8. The above facts are true and correct and based upon my own personal knowledge.

John R. Connors

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUBSCRIBED AND SWORN TO before me in Burrilville, Rhode Island this 7th day of March, 2005.

Kevin J. McAllister, Notary Public
My Commission Expires June 14, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BURRILVILLE SCHOOL DEPARTMENT

v. C.A. No.

W.B. a minor, by and through his
Natural parents and next friends, Mr. & Mrs. B.

**AFFIDAVIT OF TERRY L. ROBINSON**

Now comes Terry L. Robinson, of Burrilville, Rhode Island, who, having been duly sworn, does hereby depose and state as follows:

1. I am the Lead Special Education Teacher at the Burrilville Middle School and have held this position since October, 2004.

2. I am personally familiar with W.B., an eighth grader in the Burrilville Middle School.

3. I have interacted with W.B. on several occasions.

4. Sometime in February, 2005, I was asked to assist with W.B. who had become very angry during school. I helped calm him down. The next morning, when he was spoken to about the previous days' conduct, I observed him get very angry and punch a concrete wall. I was so concerned that I took him to the school nurse to examine his hand. I had observed him punch a wall on a previous occasion, and brought him to the nurse on that occasion as well.

5. On or about March 2, 2005, I heard W.B. in the lunch line threaten to throw something at Mr. Murphy and hit him with it. Approximately 20 minutes later, while escorting him to his class, W.B. said he was going "to get" Mr. Murphy on the last day of school, and that he will get revenge against Mr. Murphy, and that when he says he will get revenge against someone, he gets revenge. He also said he will get Mr. Murphy fired.

6. I felt at the time, and continue to feel that W.B. might attempt to cause physical harm to Mr. Murphy.

7. I also felt and expressed, on the same day (on or about March 2, 2005), that I had to be the person to tell W.B. that I was the one who had reported his threat against Mr. Murphy. I felt at the time that if a third party told W.B. that I was the one to report him, that he might attempt to harm me.

8. The above facts are true and correct and based upon my own personal knowledge.

Terry L. Robinson

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUBSCRIBED AND SWORN TO before me in Burrilville, Rhode Island this 7th day of March, 2005.

Kevin J. McAllister, Notary Public
My Commission Expires June 14, 2005.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BURRILVILLE SCHOOL DEPARTMENT

v. C.A. No.

W.B. a minor, by and through his
Natural parents and next friends, Mr. & Mrs. B.

**AFFIDAVIT OF STEVEN R. PICKERING**

Now comes Steven R. Pickering, of Cumberland, Rhode Island, who, having been duly sworn, does hereby depose and state as follows:

1. I am the Fitness Teacher at the Burrilville Middle School.

2. I am personally familiar with W.B., an eighth grader in the Burrilville Middle School.

3. I have interacted with W.B. on several occasions, primarily when I was his fitness teacher in the Fall of 2004.

4. On three or four occasions, in my presence, W.B. threatened to kill himself using the gesture of pointing his index finger and thumb at his head in the manner of demonstrating pointing a hand gun to his head.

5. In my experience, he very quickly can get extremely agitated, animated and lose control. When this happens, he will not follow any directives.

6. I have personally observed him punch doors, kick lockers, and slam doors in anger.

7. On one occasion he admitted to me that he had threatened (to others) to vandalize my automobile.

8. The above facts are true and correct and based upon my own personal knowledge.

Steven R. Pickering

STATE OF RHODE ISLAND
PROVIDENCE, SC.

SUBSCRIBED AND SWORN TO before me in Burrilville, Rhode Island this 7th day of March, 2005.

Kevin J. McAllister, Notary Public
My Commission Expires June 14, 2005.